UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTER BAGS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3093 |
| | § | |
| REDI BAG USA LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM AND ORDER

In this patent infringement suit, the parties seek construction of several terms contained in the asserted claims of U.S. Patent Nos. 5,732,833 (the "'833 Patent") and 7,314,137 (the "'137 Patent"). This Court held a hearing on January 14, 2011, during which the parties presented argument in support of their proposed constructions. This Court now construes the disputed claim terms as a matter of law under *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

## I.    BACKGROUND

This case involves two patents for devices used to dispense plastic bags such as those used in the produce sections of grocery stores. Plaintiff/Counter-Defendant Better Bags, Inc. ("Better Bags") is the owner of the '833 Patent, which discloses a floor-standing dispensing assembly for supporting packs of plastic bags, including a hook with an inclined segment and a "header" that holds a pack of plastic bags and that attaches to the floor-standing dispenser. Defendant/Counter-Plaintiff Redi Bag USA LLC ("Redi

Bag") is the owner of the '137 Patent, which discloses a dispenser in which plastic bags are attached to a header so that when the top of a bag is detached, the bottom of the bag remains in a pouch rather than falling to the floor.

Claim 1 of '833 Patent provides[1]:

> A floor standing dispensing assembly for dispensing plastic bags, the dispensing assembly comprising:
>> a base member;
>> a vertical member attached to said base member;
>> a support hook comprising:
>>> an attachment segment for attaching to said vertical member;
>>> an inclined planer segment; and
>>> a substantially horizontal segment;
>> an outer frame assembly attached to said vertical member; and
>> a plurality of dips mounted to said outer frame assembly.

(Doc. No. 26-1, at col. 8, ll. 18-30.) Claim 3 of that patent provides:

> A dispensing assembly for dispensing plastic bags of the type stacked onto one another and having a lower bag portion and a disposable upper portion, the dispensing assembly having a plurality of support hooks for supporting the stack of plastic bags, wherein the improvement comprises:
> a header connected to the disposable upper portion of the stack of plastic bags, said header is made from a substantially rectangular piece of plastic having a handle formed from a generally central area of said substantially rectangular piece with said substantially rectangular piece folded longitudinally, said header having a continuous front flange and a continuous back flange along the length of said header, said header including a pair of upper tabs, each said upper tab having a hole therethrough for hanging the stack of plastic bags.

(*Id.* at col. 8, ll. 35-51.)

Claim 1 of the '137 Patent provides:

> A bag dispenser comprising: a header, said header comprising a front wall and a rear wall attached together to form a recess; a bag, said bag comprising a perforation line dividing the bag into a first section and a second section, said first section being situated within said header recess and retained between said front wall and said rear wall of said header; a

---

[1] The claims at issue in this case are not limited to those quoted in this section. The court quotes several claims in full here, however, in order to provide some context to the disputed terms.

pouch, said pouch comprising a front wall having a bottom edge, side edges and a top edge, and a rear wall having a bottom edge and side edges, said bottom edge and said side edges of said front wall and said bottom edge and said side edges of said rear wall, respectively, being joined together to form said pouch, said top edge of said front wall being unattached so as to define an opening for said pouch spaced from said header; and means for attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch.

(Doc. No. 27-1, at col. 4, ll. 24-40.)

## II.    LEGAL STANDARD

### A.  Claim Construction

Claim construction is a matter of law, and thus the task of determining the proper construction of all disputed claim terms lies with the Court. *Markman*, 517 U.S. at 372. The Federal Circuit has opined extensively on the proper approach to claim construction, most notably in its recent opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

The goal of a *Markman* hearing is to arrive at the ordinary and customary meaning of a claim term in the eyes of a person of ordinary skill in the art. *Phillips*, 415 F.3d at 1313. In order to do so, the Court should first look to intrinsic evidence to decide if it clearly and unambiguously defines the disputed terms of the claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1585 (Fed Cir. 1996). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314.

Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention. *O2 Micro Int'l Ltd. v. Beyond*

*Innovation Technology Co.,* 521 F.3d 1352, 1360 (Fed. Cir. 2008). Thus, the inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. *Phillips*, 415 F.3d at 1313. That starting point is based on "the well-settled understanding that inventors are typically persons skilled in the field of the invention, and that patents are addressed to, and intended to be read by, others of skill in the pertinent art." *Id*. A district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims. *O2 Micro Intern.*, 521 F.3d at 1360; *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in non-construction of "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in lower court's refusal to construe "irrigating" and "frictional heat").

The claims themselves provide substantial guidance as to the meaning of particular claim terms. *Phillips,* 415 F.3d at 1314. To begin with, the context in which a term is used in the asserted claim can be highly instructive. *Id*. Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. *Vitronics,* 90 F.3d at 1582. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims. *Phillips*, 415 F.3d 1303.

In addition, the specification, or the part of the patent where the inventor describes and illustrates the invention in significant detail, "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the

meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The importance of the specification in claim construction derives from its statutory role. The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112, ¶ 1. Consistent with that general principle, cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs. *Phillips*, 415 F.3d at 316. In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive. *Id*. The specification may also resolve ambiguous claim terms that are not sufficiently clear to permit the scope of the claim to be ascertained from the words alone. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

Notably, while the specification may describe very specific embodiments of the invention, the claims are not to be confined to these embodiments. *Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006) (quoting *Phillips*, 415 F.3d at 1323). However, the importance of limiting language in the specification has been discussed by the Federal Circuit in terms that favor a restrictive reading. For example, in *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1375 (Fed. Cir. 2006), the court stated:

> However, in whatever form the claims are finally issued, they must be interpreted, in light of the written description, but not beyond it, because otherwise they would be interpreted to cover inventions or aspects of an invention that have not been disclosed. Claims are not necessarily limited

to preferred embodiments, but, if there are no other embodiments,  and  no other disclosure, then they may be so limited. One does not receive entitlement to a period of exclusivity for what one has not disclosed to the public.

*See also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) (holding that the meaning of a claim was limited to the single embodiment disclosed in the specification). There is "a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Finally, the prosecution history, which has been designated as part of the "intrinsic evidence," consists of the complete record of the proceedings before the U.S. Patent and Trade Office ("PTO") and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. Yet, because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. *Id.* Still, "a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *see also Omega Engineering Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (finding that the doctrine of prosecution disclaimer is well established and precludes patentees from recapturing through claim construction specific meanings disclaimed during prosecution). A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004)

(limiting the term "transmitting" to require direct transmission over telephone line because the patentee stated during prosecution that the invention transmits over a standard telephone line, thus disclaiming transmission over a packet-switched network); *Alloc v. Int'l Trade Comm'n,* 342 F.3d 1361, 1372 (Fed. Cir. 2003) (finding the patentee expressly disavowed floor paneling systems without "play" because the applicant cited the feature during prosecution to overcome prior art); *Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001) (limiting operation of the "transceiver" to the three stated modes because of clearly limiting statements made by the patentee to try to overcome a prior art rejection).

Only if there is still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should a trial court resort to extrinsic evidence, such as expert witness testimony, dictionary definitions, and legal treatises. *See Vitronics*, 90 F3d at 1585. While extrinsic evidence "can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.' " *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n,* 366 F.3d 1311, 1318 (Fed. Cir. 2004)). The judicial arbiter must be sufficiently informed so that she may step into the shoes of the ordinary skilled artisan. It is here that the use of extrinsic evidence makes the most sense.

### B.  Means-Plus-Function Claims

35 U.S.C. Section 112, ¶ 6 provides:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, *and such claim shall be construed to*

*cover the corresponding structure, material, or acts described in the specification and equivalents thereof* (emphasis added).

Means-plus-function claims contain only purely functional limitations but do not provide the structures that perform the recited function. *See Phillips*, 415 F.3d at 1311; *Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365 (Fed. Cir. 2000). Section 112 ¶ 6 allows a patentee to "describe an element of his invention by the result accomplished or the function served, rather than describing the item or element to be used." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997). The claim is then interpreted with reference to, and as limited by, the related structure disclosed in the patent for performing the function recited in the claim, or the equivalents thereof. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099 (Fed. Cir. 2008); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998). "Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008).

This Court must determine, as a matter of law, whether a phrase should be construed as a means-plus-function term. *Welker Bearing*, 550 F.3d at 1096. If the word "means" is used in a claim element, in combination with a function, the court must presume that Section 112, ¶ 6 applies unless the claim recites a sufficient structure to perform the function. *Id*.; *TriMed*, 514 F.3d at 1259; *Micro Chem., Inc. v. Great Plains Chem Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999). If the word "means" is not used, the presumption is that a claim falls outside of Section 112, ¶ 6. *Micro Chem.*, 194 F.3d at 1257. This presumption is rebutted by showing that the claim element recites a function

without reciting sufficient structure for performing that function. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000). If means-plus-function analysis applies, a court must first determine what the claimed function is and then determine the corresponding structures disclosed in the specification that perform that function. *Welker Bearing*, 550 F.3d at 1097; *Minks v. Polaris Indus., Inc*., 546 F.3d 1364, 1377 (Fed. Cir. 2008).

## III.    ANALYSIS OF CLAIM TERMS

### A.  '833 Patent

The parties disagree about the construction of seven terms in the '833 Patent. Better Bags argues that none of the terms needs construction, but also provides proposed alternative constructions. Redi Bag argues that two terms should be construed as means-plus-function claims, and that several others need constructions. The parties previously disputed two other terms—"disposable upper portion" and "rectangular piece folded longitudinally"—but now agree that those terms need no construction. The Court addresses each of the disputed terms in turn.

> **1.** "**A dispensing assembly for dispensing plastic bags**"
> **2.** "**A plurality of support hooks for supporting the stack of plastic bags**"

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| **1.** "**a dispensing assembly for dispensing plastic bags**" | No construction required, or in the alternative: "a collection of parts put together to form a unit that can be used to dispense plastic bags" | This element recites function and thus invokes 35 USC §112 ¶6. "a floor standing dispensing assembly with a vertical member attached to a base member.  The assembly does not include the plastic bag pack and |

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| | | header." |
| 2. "**a plurality of support hooks for supporting the stack of plastic bags**" | No construction required,<br><br>or in the alternative:<br><br>"more than one support hook for supporting the stack of plastic bags" | This element recites function and thus invokes 35 USC §112 ¶6.<br><br>"The hooks have an upper horizontal segment, an inclined segment and an attachment segment. A plurality means two hooks equally spaced apart from the center." |

Redi Bag argues that these are means-plus-function terms under 35 U.S.C. § 112 ¶ 6, while Better Bags argues they are not. Better Bags also contends that none of the limitations of Redi Bag's proposed constructions should be read into the terms.

First, the Court finds it inappropriate to adopt the limitations that Redi Bag proposes. Better Bags argues that this term is in "Jepson" format, as described in 37 C.F.R. § 1.75(e):

> Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order:
> (1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,
> (2) A phrase such as "wherein the improvement comprises," and
> (3) Those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

The Court agrees. Both of these terms are contained in the preamble of claim 3, followed by the phrase "the improvement comprises" and a description of elements of the header that are claimed as new. The terms describe "the elements or steps of the claimed combination which are conventional or known" rather than the claimed new types of "dispensing assembly" and "support hooks" described in claims 1 and 2. Thus, the Court finds it inappropriate to include the limitations of claims 1 and 2 in construing these terms.

Next, the Court finds that these are not means-plus-function terms under Section 112 ¶ 6. Because these claim elements do not use the word "means," there is a presumption that they are not means-plus-function terms. *Micro Chem.*, 194 F.3d at 1257; *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) ("the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome"). Redi Bag argues that Section 112 ¶ 6 still applies because the terms describe functions but do not describe any structures. However, the Federal Circuit has held that, to avoid application of Section 112 ¶ 6, a claim term need not "denote a specific structure." *Lighting World*, 382 F.3d at 1358. "Instead, . . . it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Id.* at 1359-60. As the Court concluded above, these terms refer to already-existing dispensing assemblies and support hooks. As a result, the structures described in claim 3, while not referring to one specific structure, are sufficient under *Lighting World* to avoid application of Section 112 ¶ 6.

Redi Bag has not presented sufficiently persuasive arguments to overcome the strong presumption that these terms are not covered by Section 112 ¶ 6.[2]

Because both of these terms would be clear to a person of ordinary skill in the art, the Court finds that they require no construction.

### 3. "A header"

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| 3. "a header" | "a thing to which something hangs on or by which something is hung" | "The plastic structure part of the bag pack used to hang the stack of bags from the dispensing assembly." |

At the *Markman* hearing, Redi Bag suggested a revised construction of "the structure used to hang the stack of bags from the dispensing assembly." However, Better Bags still disputes the inclusion of ". . . from the dispensing assembly" in this term.[3]

The Court finds it inappropriate to read such a limitation into this term. Nothing in the patent requires the term itself to be limited to hanging bags "from the dispensing assembly." To the extent that the claims are limited to such a use, that will be made clear by the entirety of the claim language, not by the Court reading the limitation into the

---

[2] Redi Bag relies on *Mas-Hamilton Group v. LaGard, Inc.*, in which the Federal Circuit affirmed a district court's finding that a term was covered by Section 112 ¶ 6 even though it did not include the word "means." 156 F.3d 1206, 1214 (Fed. Cir. 1998). In that case, however, the district court found that "lever moving element" was not a "known structure in the lock art" and so the claim did not describe any structure. *Id.* at 1213-14. In the instant case, by contrast, the Court finds that "dispensing assemblies" and "support hooks" do refer to known structures such as those described in the background section of the patent, so *Mas-Hamilton Group* does not alter the holding.

[3] Redi Bag indicated in its Responsive Brief that the parties had agreed to Redi Bag's proposed construction, Doc. No. 28, at 14, and so did not provide the Court with briefing as to why "from the dispensing assembly" should be included. Redi Bag did, however, present arguments for its inclusion at the hearing.

simple term "a header." Moreover, such a limitation would potentially be confusing, as claims 5, 6, 7, and 8 describe a "dispensing assembly" as including "a header." There could thus be the unnecessary implication that, for those claims, a header must hang a stack of bags from an apparatus of which the header itself is a part. Therefore, the Court finds it appropriate to adopt the revised construction that Redi Bag proposed at the hearing, with the omission of "from the dispensing assembly." "A header" is thus construed to mean "the structure used to hang the stack of bags."

### 4.  "A handle formed from a generally central area"

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| 4. "a handle formed from a generally central area" | "the part of a thing formed from the generally central area of the thing that may be lifted, grasped, seized, held, etc. by the hand" | "An extension extending up from the central area of the header so as to form a handle.  The handle cannot extend the length of the header." |

This dispute essentially concerns whether the "handle" must extend up from the header or whether a hole in the header that does not extend up (using which one could hold the header) could constitute a "handle." As with the previous term, Redi Bag argues that limitations should be included in the term, while Better Bags argues they should not.

The Court is again unconvinced that the patent requires limitations to be read into this term. Redi Bag states that its proposal "recites the handle that is in the claim, in the specification and therefore in the patent," but does not point to specific language

requiring that it be read into the claim term. While Redi Bag's proposed limitations may describe the specific embodiment of the invention described in the patent, it is well established that each feature of the specific embodiment described in the specification does not constitute a limitation on the patent claims. See, e.g., *Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006) ("Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.") (internal citation omitted); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003) ("courts must take extreme care when ascertaining the proper scope of the claims, lest they simultaneously import into the claims limitations that were unintended by the patentee"). It is up to the jury to determine whether the term, as construed by the Court, applies to an allegedly infringing product. *See PPG Indus. v. Guardian Indus. Corp.,* 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact"). The Court thus finds that the term "handle formed from a generally central area" is clear and needs no construction.

### 5.   "A continuous front flange and a continuous back flange"

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
| --- | --- | --- |
| 5. "a continuous front flange and a continuous back flange" | "a continuous front projection used for strength or for attaching to another object and a continuous | "the flange must be continuous, providing |

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| | back projection used for strength or for attaching to another object" | rigidity to the stack of bags held by the header" |

At the hearing, Redi Bag agreed to Better Bags' alternative construction. Better Bags' insists that no construction is needed because a person of ordinary skill in the art would understand the meaning of the word "flange."

Better Bags' proposed alternative construction is essentially an insertion of a dictionary definition of "flange" into the term. Better Bags contends that no construction at all is needed. However, it is not fully clear that "flange" has a clear meaning, and in an effort to reach an agreement, Redi Bag agreed to accept Better Bags' alternative construction. In the interest of caution and clarity, the Court finds it appropriate to adopt that construction. Accordingly, this term is construed to mean "a continuous front projection used for strength or for attaching to another object and a continuous back projection used for strength or for attaching to another object."

### 6. "A pair of upper tabs"

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| 6. "a pair of upper tabs" | "two upper projections" | "two separate small extensions, extending vertically on both sides of and spaced apart from the central area of the header, forming hanging tabs.  The tabs are separate from the |

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| | | handle." |

Redi Bag argues that the upper tabs must be spaced equally apart from the center of the header in order to function. Better Bags contends that there is no such requirement in the invention. At the hearing, Redi Bag argued that "any two upper projections" would not satisfy the invention or its purpose. However, Redi Bag cannot point to anything in the patent or elsewhere that requires a reading of these limitations into the term. The Court finds that "a pair of upper tabs" is clear and that no construction is needed.

7. **"Elongate opening through said handle for hanging the stack of plastic bags"**

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| 7. **"elongate opening through said handle for hanging the stack of plastic bags"** | "an opening through the handle for hanging the stack of plastic bags, the opening having a length larger than its width" | "An opening in the handle for hanging the header on a wide hook.  The opening must be sufficiently elongated to cooperate with a central support hook to provide lateral stability." |

Redi Bag argues that the invention involves only a specially designed hook, while Better Bags contends that such a limitation would improperly confine the invention to particular embodiments and examples given in the specification. As with the other terms

discussed above, Redi Bag points to nothing in the patent that requires these limitations to be read into the claim term. The Court finds that this term is clear and needs no construction.

**B.   '137 Patent**

The parties disagree about the construction of three terms in the '137 Patent. The parties previously disputed two other terms—"a header" and "a rear wall having a bottom edge and side edges"—but now agree that those terms need no construction. The Court addresses each of the disputed terms in turn.

**1.   "A front wall having a bottom edge, side edges, and a top edge"**
**2.   "Said top edge of said front wall being unattached so as to define an opening for said pouch spaced from said header"**

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| 1. "a front wall having a bottom edge, side edges, and a top edge" | "The front wall has a bottom edge, two side edges and a top edge that extends from the first side edge on one end to the second side edge on the other end. The front wall has four borders, namely the top edge, the bottom edge and the two side edges." | Needs no construction, or in the alternative: "the front wall has a bottom edge, two side edges and a top edge" |
| 2. "said top edge of said front wall being unattached so as to define an opening for said pouch spaced from said header" | "The top edge of the front wall that extends from the first side edge of the front wall to the second side edge of the front wall is only attached to the side edges and defines an opening formed between the front | Needs no construction, or in the alternative: "at least a portion of the top edge must be cut away or open to allow the formation of a pouch |

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| | wall and the back wall. There is space between the header and the opening." | opening so that bags can be retrieved from the pouch" |

Redi Bag argues that these terms need no construction, while Better Bags argues that the limitations it proposes are required by the prosecution history of the patent. Specifically, on June 1, 2007, a PTO examiner rejected claims 1-2, 5-6, 11-12, and 15-16 of the '137 Patent application as being anticipated by U.S. Patent No. 3,306,492 to Kugler (the "Kugler Patent"). (Doc. No. 29-1, PTO Office Action.) The Kugler Patent, which issued in 1967, discloses a device for dispensing plastic bags in which the bags are pulled out through an oval-shaped opening in the front wall, generally speaking in the manner of a tissue box. In response to the rejection, the inventor of the '137 Patent amended the claims to describe the pouch as:

> . . . comprising a front wall having a bottom edge, side edges and a top edge, and a rear wall having a bottom edge and side edges, said bottom edge and said side edges of said front wall and said bottom edge and said side edges of said rear wall, respectively, being joined together to form said pouch, said top edge of said front wall being unattached so as to define [an opening] for said pouch spaced from said header . . . .

(Doc. No. 29-3, at 4-6.) The response noted, "The pouch is now required to have front and rear walls, the bottom edge and side edges of which are joined to form the pouch, with the top edge of the front wall unattached so as to form the pouch opening," and "[t]he dispensing bag 12 of Kugler has no front wall with an unattached top edge. Further, the bottoms of consumer bag 14 do not extend through the oval opening 26." (*Id.* at 8-9.)

It is well established that a patent's "prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). "The doctrine of prosecution disclaimer attaches where an applicant, whether by amendment or by argument, unequivocally disavowed a certain meaning to obtain his patent." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1287 (Fed. Cir. 2010); *see also id.* (disclaimer must be "clear and unmistakable," and "ambiguous disavowal will not suffice").

Better Bags argues that, in distinguishing the '137 Patent from the Kugler Patent, the inventors limited their claims to those in which, among other things, the front wall extends from one side edge to the other side edge, and the top edge of the front wall is only attached to the side edges. At the hearing, the parties made clear that this dispute arises specifically in the context of whether the '137 Patent would cover a device in which the front wall of the pouch was unattached to the header in the center but was attached closer to the sides, creating an opening in which only part of the top of the bags was outside of the pouch. The central issue in construing both of these terms, thus, is whether the top edge of the front wall of the pouch must be *completely unattached* from the header—in other words, whether the top edge must attach only to the two side edges, leaving the tops of the bags outside of the pouch all the way across the header.

The Court finds no "clear and unmistakable" disavowal of all embodiments in which the top edge of the pouch is partially attached to the header, and thus is not *only* attached to the two side edges. In amending the claims to distinguish the Kugler Patent, it the inventors of the '137 Patent clearly disavowed embodiments in which the top edge

was *completely attached* to the header so that opening does not touch the top of the device, as in the Kugler Patent. However, the inventors did not need to disavow any more than that in order to distinguish the Kugler Patent, and it is not clear that they did so.

Moreover, the language of the amendment (including the two disputed terms at issue) does not require that the top edge be attached in no place to the header. Rather, it requires that it be "unattached so as to define [an opening] for said pouch spaced from said header." An embodiment in which the middle of the front wall is unattached from the header but the sides of the front wall are attached would still be "unattached so as to define an opening . . ." and so could be covered by the claims. Similarly, the phrase "a front wall having a bottom edge, side edges, and a top edge" does not restrict the claim in this way, as a partially unattached embodiment would still have a front will with a bottom edge, side edges, and a top edge.

Better Bags also argues that the prosecution history requires Better Bags' proposed limitations because, if the front wall is partially attached, the bottoms of the bags would not "extend through" the opening until they were removed from the pouch, and this would contradict the inventors' statement that accompanied the amendment. However, although the inventors indeed noted that in the Kugler Patent "the bottoms of consumer bag 14 do not extend through the oval opening 26," the amendment to the claim language uses the terminology "first section" and "second section" of the bags, and states that the "at least a portion of said second section of each of said bags may extend through said pouch opening and within said pouch." (Doc. No. 29-3, at 5-6.) Thus, while the inventors noted that the bottoms of the bags did not extend through the opening in the Kugler Patent, the amended language states that "at least a portion" (rather than the

entirely) of the second section of the bag must extend through the opening and into the pouch. The Court cannot find that on this basis that the inventors clearly and unequivocally disavowed all embodiments in which part of the front wall is attached to the header.

Accordingly, with regard to the first term, "a front wall having a bottom edge, side edges, and a top edge," the Court finds that no construction is needed. With regard to the second term, "said top edge of said front wall being unattached so as to define an opening for said pouch spaced from said header," the Court finds it appropriate to clarify the meaning by adopting Redi Bag's proposed construction, "at least a portion of the top edge must be cut away or open to allow the formation of a pouch opening so that bags can be retrieved from the pouch."

3. **"Means for attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch"**

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
| --- | --- | --- |
| 3. "means for attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch" | 35 U.S.C. § 112, ¶ 6<br><br>"The pouch is attached to the header so that a portion of the second section of the bags can extend through the pouch opening into the pouch. The second section of the bags must pass through the opening to extend into the pouch. The first section of the bags does not extend through the | Needs no construction,<br><br>or alternatively,<br><br>"the pouch is attached to the header so that a portion of the second section of the bags can extend through the pouch opening into the pouch" |

| Term, Phrase, or Clause | Better Bags' Proposal | Redi Bag's Proposal |
|---|---|---|
| | opening and is not within the pouch." | |

Better Bags argues that this a means-plus-function term governed by Section 112 ¶ 6, while Redi Bag contends it needs no construction. Because the word "means" is used, there is a presumption that it is governed by Section 112 ¶ 6. The function described is "attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch," and no structure is identified in the claim. Therefore, the claim is governed by Section 112 ¶ 6.

The Court next must look to the specification to determine which structure or structures are disclosed to accomplish the named function. In the '137 Patent, the only structure disclosed as a means for attaching the pouch and header is "back sheet." (*See* Doc. No. 27-1, at col. 3, ll. 47-52.) The specification describes the back sheet as "preferably made of the same plastic sheet material as the bag walls, but considerably thicker stock than the walls of the bags, to give the back considerably more strength than the bag walls." (*Id.* at col. 3, ll. 38-41.) The specification also states, "Preferably, rear wall of the pouch is integral with back sheet so that the pouch and the attaching means can be manufactured together." (*Id.* at 50-52.) Thus, this term is limited to a structure including a back sheet and its equivalents as a means to accomplish the stated function.

A second issue arises because the functions described in the specification and the claim are worded differently. Whereas in the claim term the stated function is "attaching

said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch," the specification states that the "[b]ack sheet 22 constitutes a means for attaching pouch 24 and header 10 such that the bottom section of each of the bags 20 may be extend [sic] through opening 36 and within pouch 24." The latter language is similar to that used by the inventors in the amendments in noting that, in the Kugler Patent, "the bottoms of consumer bag 14 do not extend through the oval opening 26." (Doc. No. 29-3, at 9.) As discussed above, the inventors amended the claim language to state only that "at least a portion of" the second section of the bags must extend through the opening and within the pouch. However, they did not similarly amend the specification language.[4]

The Court finds that the specification language that "the bottom section of each of the bags may be extend [sic] through opening and within pouch" constituted a *more-specific function* rather than a structure that accomplishes that function. The language is clearly analogous to that in the means-plus-function claim language, which the Court above found to not disclose a structure.[5] Therefore, the structure for purposes of this term is not limited to those in which the bottom section of each bag may be extended through the opening and within the pouch. The limitations of Better Bags' proposed construction are not supported by the language of the patent, so the Court declines to adopt them.

---

[4] The inventors' failure to amend the specification language may have been mere inadvertence. However, "the district court can correct an error only if the error is evident from the face of the patent." *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005). Where no certificate of correction has been issued, the court may only correct an error if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003). If there is indeed an error in the '137 Patent, it is not evident from the face of the patent but instead requires looking to the prosecution history. Moreover, whether there is an error is subject to reasonable debate. Therefore, the Court finds that it cannot alter the language of the specification.

[5] If the Court *had* found that this specification language described a structure, it would also need to find that the claim language described a structure, in which case it would not be covered by Section 112 ¶ 6.

The Court finds that this term falls within 35 U.S.C. § 112 ¶ 6, and it thus limited to the disclosed structures and their equivalents. The function of "attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch" is accomplished using:

A back wall, preferably made of the same plastic sheet material as the bag walls, but considerably thicker stock than the walls of the bags, to give the back considerably more strength than the bag walls. Preferably, rear wall of the pouch is integral with back sheet so that the pouch and the attaching means can be manufactured together.

## IV.    CONCLUSION

The Court hereby construes the disputed terms and phrases as follows:

### Terms in '833 Patent

| Term, Phrase, or Clause | Court's Construction |
|---|---|
| "a dispensing assembly for dispensing plastic bags" | No construction needed |
| "a plurality of support hooks for supporting the stack of plastic bags" | No construction needed |
| "a header" | "the structure used to hang the stack of bags" |
| "a handle formed from a generally central area" | No construction needed |
| "a continuous front flange and a continuous back flange" | "a continuous front projection used for strength or for attaching to another object and a continuous back projection used for strength or for attaching to another object" |

| Term, Phrase, or Clause | Court's Construction |
|---|---|
| **"a pair of upper tabs"** | No construction needed |
| **"elongate opening through said handle for hanging the stack of plastic bags"** | No construction needed |

**Terms in '137 Patent**

| Term, Phrase, or Clause | Court's Construction |
|---|---|
| **"a front wall having a bottom edge, side edges, and a top edge"** | No construction needed |
| **"said top edge of said front wall being unattached so as to define an opening for said pouch spaced from said header"** | "at least a portion of the top edge must be cut away or open to allow the formation of a pouch opening so that bags can be retrieved from the pouch" |
| **"means for attaching said pouch to said header such that at least a portion of said second section of said bag may extend through said pouch opening and within said pouch"** | Construed pursuant to 35 U.S.C. § 112 ¶ 6 as using "a back wall, preferably made of the same plastic sheet material as the bag walls, but considerably thicker stock than the walls of the bags, to give the back considerably more strength than the bag walls. Preferably, rear wall of the pouch is integral with back sheet so that the pouch and the attaching means can be manufactured together." |

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 21st day of January, 2011.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE