UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BETTER BAGS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-09-3093** |
| | § | |
| **REDI BAG USA LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is Defendant's Motion for Summary Judgment of Invalidity (Doc. No. 35) and Plaintiff's Motion to Strike Redi Bag USA LLC's Summary-Judgment Evidence (Doc. No. 42). After considering these motions, all responses thereto, and the applicable law, the Court finds that the Motion for Summary Judgment must be granted and the Motion to Strike must be denied.

**I.   BACKGROUND**

This case involves two patents for devices used to dispense plastic bags such as those used in the produce sections of grocery stores. Plaintiff/Counter-Defendant Better Bags, Inc. ("Plaintiff" or "Better Bags") is the owner of U.S. Patent No. 5,732,833 (the "'833 patent"), which discloses a floor-standing dispensing assembly for supporting packs of plastic bags, including a hook with an inclined segment and a "header" that holds a pack of plastic bags and that attaches to the floor-standing dispenser. Defendant/Counter-Plaintiff Redi Bag USA LLC ("Defendant" or "Redi Bag") is the owner of U.S. Patent No. 7,314,137 (the "'137 patent"), which discloses a dispenser in which plastic bags are attached to a header so that when the top of a bag is detached, the bottom of the bag remains in a pouch rather than falling to the floor.

1

Plaintiff previously filed a lawsuit against Defendant, and the parties signed a settlement agreement resolving all of their disputes.  (C.A. No. 4:08-cv-3733, *Better Bags, Inc. v. Redi Bag USA LLC*, S.D. Tex.)  Judge Sim Lake entered a Final Consent Judgment and Agreed Permanent Injunction on June 10, 2009.  However, Defendant subsequently filed suit in the Supreme Court of the State of New York, County of Nassau.

Plaintiff brought the present action against Defendant in this Court for infringement of the '833 patent, breach of contract for violating the settlement agreement, and fraud in executing the settlement agreement.  (Am. Compl., Doc. No. 16, ¶¶ 19–37.)   Plaintiff also requested that the Court award exemplary damages, attorney's fees, and costs, and asks for a recission of the settlement agreement to allow Plaintiff to resume its litigation.  (*Id.* ¶¶ 38–43.)  Defendant counterclaimed for infringement of the '137 patent and a declaratory judgment of patent invalidity, unenforceability, and non-infringement.  (Am. Answer, Doc. No. 17, ¶¶ 7–25.)

Defendant states that only claims 3 and 4 of the '833 patent are at issue in this case. Claim 3 of that patent provides:

> A dispensing assembly for dispensing plastic bags of the type stacked onto one another and having a lower bag portion and a disposable upper portion, the dispensing assembly having a plurality of support hooks for supporting the stack of plastic bags, wherein the improvement comprises:
> a header[1] connected to the disposable upper portion of the stack of plastic bags, said header is made from a substantially rectangular piece of plastic having a handle formed from a generally central area of said substantially rectangular piece with said substantially rectangular piece folded longitudinally, said header having a continuous front flange and a continuous back flange[2] along the length of said header, said header including a pair of upper tabs, each said upper tab having a hole therethrough for hanging the stack of plastic bags.

---

[1] The Court construed the term "header" to mean "the structure used to hang the stack of bags."  (Memorandum and Order, Doc. No. 33, at 24.)
[2] The Court construed the phrase "continuous front flange and a continuous back flange" to mean "a continuous front projection used for strength or for attaching to another object and a continuous back projection used for strength or for attaching to another object."  (*Id.*)

(('833 patent, Doc. No. 26-1, at col. 8, ll. 35–51.)  Claim 4 provides, "The dispensing assembly of claim 3, wherein said header has an elongate opening through said handle for hanging the stack of plastic bags."  (*Id.* at col. 8, ll. 52–54.)

Defendant argues that Pennsak, the predecessor to Defendant,[3] was manufacturing, selling, and using plastic bag packs with headers containing a central handle surrounded by a pair of tabs.  Therefore, Defendant asserts that the patent is invalid "[b]ecause headers, bag packs, and rack[s] having all of the elements of claims 3 and 4 were known, used, in public use and on sale in this country" before the alleged invention and more than one year prior to the application for the patent.  (Mot. Summ. J. at 3.)  Defendant moves for summary judgment of invalidity based on 35 U.S.C. §§ 102(a) and (b).

## II.  LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).[4]  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id.*  "[T]he court should give credence to

---

[3] In 2004, Pennsak transferred its plastic bag business to Defendant and sold its facilities and equipment to Crosstex International.  Defendant is the successor in interest of the business of Pennsak.  (Boyer Decl.. Doc. No. 35-1, ¶ 4.)
[4] Because summary judgment standards do not implicate substantive patent law, the Court applies the standards set forth by the Fifth Circuit.  *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1352 (Fed. Cir. 2008).

the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Additionally, any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. SUMMARY JUDGMENT OF INVALIDITY

### A. Legal Standard

Defendant asserts that it is entitled to summary judgment based on the invalidity of claims 3 and 4 of the '833 patent. Under 35 U.S.C. § 102,

> A person shall be entitled to a patent unless—
> (a) the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent, or
> (b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. §§ 102(a)–(b). "Sections 102(a) and (b) operate in tandem to exclude from consideration for patent protection knowledge that is already available to the public." *Bonito*

4

*Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989). "Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).

An alleged infringer asserting patent invalidity must overcome the presumption of validity with clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. Partnership*, -- U.S. --, 131 S. Ct. 2238, 2244–53 (2011). Therefore, the Court may only grant summary judgment if the alleged infringer has presented "such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001).

### 1.   "Known or Used": § 102(a)

Invalidity based on § 102(a) requires a showing that the invention is not in fact new, but was previously known or used by others. "Invalidation on this ground requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). In order to invalidate a patent under this section, the knowledge or use must have been "accessible" to the public. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

The critical date under § 102(a) is defined as the date of invention. As neither Defendant nor Plaintiff has introduced evidence on the date of invention, it is presumed to be July 23, 1996, the date that the patent application was filed. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998).

### 2.  Public Use and On Sale Bars: § 102(b)

Similarly, a party may prove invalidity under 102(b) by establishing that the invention was "in public use" or "on sale" more than a year before the patent application was filed.  35 U.S.C. § 102(b).  "The section 102(b) 'public use' and 'on sale' bars are not limited to sales or uses by the inventor or one under the inventor's control, but may result from activities of a third party which anticipate the invention, or render it obvious."  *In re Epstein*, 32 F.3d 1559, 1564 (Fed. Cir. 1994).

The on sale bar applies where (1) the product is the subject of a commercial offer for sale, and (2) the invention is ready for patenting.  *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998).  The "ready for patenting" condition may be satisfied "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  *Id.* at 67–68.

The public use bar applies where "the purported use (1) was accessible to the public; or (2) was commercially exploited."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).  Additionally, the invention must satisfy the second prong of *Pfaff* and be ready for patenting.  *Id.*  "Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor."  *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).

Unlike § 102(a), the critical date is defined as one year before the filing of the patent application.  Therefore, the critical date is July 23, 1995.

### B.  Analysis

Defendant has presented clear and convincing evidence to prove that claims 3 and 4 of the '833 patent are invalid under sections 102(a) and 102(b).

Defendant argues that Pennsak, the predecessor to Defendant, was manufacturing, selling, and using plastic bag packs with headers containing a central handle surrounded by a pair of tabs.  Pennsak produced plastic bag packs using plastic headers manufactured by Youngstown Plastic Fabrication.  Defendant presents testimony that these plastic headers were produced from steel dies, which a diemaker created based on cardboard cutouts provided to Youngstown by Defendant in 1994.  Defendant presents three dies as exhibits, one of which is a design for a header with three holes. (Exhibit 5, Doc. No. 36-5.)  Additionally, Defendant introduces as exhibits purchase orders for the dies and headers and testimony to confirm that Pennsak ordered three-hole headers from Youngstown in 1994.  Defendant also presents sample bag packs using this three-hole header, representative of those that it produced in 1994, that it believes anticipate claims 3 and 4 of the '833 patent.  (*See, e.g.*, Ex. 55, Doc. No. 38-18.)  The three-hole headers contain a central elongate handle and two surrounding tabs as contemplated by claims 3 and 4.

Plaintiff does not present any evidence to dispute Defendant's claims that the patented invention was known, used, or on sale before the critical dates.

#### 1.  Relevant Evidence

John Heffern was an employee of Pennsak from May 14, 1976 through March 2004, and worked as a machine operator and production manager.  (Heffern Depo., Doc. No. 35-4, at 6, 51.)  He testified that, based on his personal knowledge, Pennsak manufactured plastic bag packs with three-hole plastic headers at least as early as 1994.  (Heffern Depo. at 16–18; Heffern Decl., Doc. No. 35-2, ¶ 7.)  He identified the plastic bag packs with three-hole headers in Exhibits 10,

22, 24, 34, 36, 39, 42, 44, 46, and 55 as being of the type manufactured by Pennsak during his employment (Heffern Decl. ¶¶ 22.)

Mr. Heffern believed that Youngstown produced headers with each of the dies identified in Exhibits 5 through 7: 8-inch headers with only one tab (Exhibit 6), 3 by 11-inch headers with three tabs (Exhibit 5), and 4 by 11-inch headers with only one tab (Exhibit 7).  (Heffern Depo. at 16–18 ; 26–27, 126.)  Mr. Heffern also testified that Pennsak purchased these plastic headers from Youngstown Plastics at least as early as 1994.  (Heffern Depo. at 14, 15, 36, 37; Heffern Decl. ¶¶ 8, 9.)  He personally recognized Exhibits 1 and 8 as plastic headers made for Pennsak by Youngstown, as he ordered headers and personally picked up such headers on more than one occasion.  (Heffern Depo. at 11, 14; Heffern Decl. ¶ 17.)

John Milligan, the owner of Youngstown Plastic Fabrication, also testified that Youngstown began to work for Pennsak in approximately 1994.  (Milligan Depo. at 6.)  He also recognized Exhibits 1 and 8 as plastic headers made for Pennsak by Youngstown, made from dies labeled as Exhibits 5 and 6.  (Id. at 12, 22.)  Youngstown hired K.D.M. Enterprises to make dies for them based on cardboard templates from Pennsak.[5]  (Id. at 8–14.)  This is confirmed by purchase orders documenting the purchase of dies from K.D.M. and the invoice for the dies from Youngstown to Pennsak.  (Exs. 12–17, 57–59, Doc. Nos. 36-12 to 36-16, 37-1, 38-20 to 38-22.)  The purchase orders and invoices confirm that the dies were produced and billed to Pennsak in March of 1994.  (Id.)

Both Mr. Heffern and Mr. Milligan confirmed that the purchase order for the 8 and 11 inch "four up" dies must be for the dies in Exhibit 5 (the 11-inch, 3 hole header) and Exhibit 6 (the 8-inch, 1 hole header).  (Ex. 13, Doc. No. 36-13; Heffern Depo. at 44; Milligan Depo. at 34–

---

[5] Mr. Milligan initially remembered the initials of the die-making company as "HKB," but he corrected himself once he saw the purchase orders.  (Milligan Depo. at 13, 33.)

35.)  It could not be an order for die 7, the only other die offered as an exhibit, because die 7 has three cavities, or is "three up."  (*Id.*)  Mr. Milligan stated that Youngstown never manufactured headers for die 7; it was only a prototype.  (Milligan Depo. at 84.)  He also noted that the lack of a rubber gasket in die 7 indicates that it likely was never in production.  (*Id.* at 116.)  Additionally, he confirmed that dies 5, 6, and 7 were the only three dies that Youngstown ever made for Pennsak.  (*Id.* at 120.)  Mr. Heffern did not recall obtaining plastic headers from any supplier except Youngstown.  (Heffern Depo. at 36–37.)

In April 1994, shortly after the dies were produced, Youngstown received an order for plastic headers for Pennsak, including both 8 inch and 11 inch headers.  (Ex. 12, Doc. No. 36-12, at 15; Milligan Depo. at 39.)  The bills of lading show proof that Pennsak picked up batches of headers from the dock in May of 1994, including 11 inch headers.  (Ex. 12 at 21–24.)

Additionally, the purchase orders identified as Exhibit 41 show that Pennsak shipped bag packs including plastic headers and 12-inch bags in April 1994 with the original "five a day" print.  (Exhibit 41.)  After reviewing the records, Mr. Heffern believed that this shipment involved 3 by 11 inch three-tab headers, even though the document does not specify the number of tabs.  (Ex. 41, Doc. No. 38-4; Heffern Decl. ¶ 20; Heffern Depo. at 55, 107.)

Victor Utlak also worked at Pennsak from 1985 through March 2004 as a machine operator and shift supervisor.  (Utlak Depo. at 5–6.)  Based on his personal knowledge, he also testified that Pennsak purchased plastic headers from Youngstown Plastics and manufactured plastic bag packs with three-hole plastic headers from 1992 to 1995.  (*Id.* at 18–21.)

Plaintiff notes that none of the written documents disclose the manufacture or the sale of bag packs with headers having three tabs.  (Resp. to Mot. Summ. J. ¶ 17.)  However, both Mr. Heffern and Mr. Milligan noted that the invoices for the dies must have been for the 8-inch die in

9

Exhibit 6 and the 11-inch die in Exhibit 5. Pennsak ordered 8-inch and 11-inch headers from Youngstown approximately one month later, so the natural conclusion is that these headers were made from the new dies. Additionally, the order in Exhibit 41 is for 3 by 11 inch[6] headers, and the only other 11-inch header die identified, presented in Exhibit 7, is 4 inches wide. (Heffern Depo. at 126.) These documents corroborate the consistent testimony from each witness that three-hole headers were manufactured by Youngstown in 1994. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51, (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." (citing *Woodland Trust*, 148 F.3d at 1373)).

Furthermore, Plaintiff identifies what it believes is "conflicting testimony." (Resp. to Mot. Summ. J. ¶ 19.) However, it does not provide any summary judgment evidence of its own or even identify the testimony on which it relies. Contrary to Plaintiff's assertion, John Heffern testified that he took *a* die to Youngstown, not die 7 in particular. (Heffern Depo. at 91.) He stated that he did not remember which of the three dies it was. (*Id.*) Furthermore, Plaintiff does not identify the importance of any alleged contradiction among witnesses of who retained possession of the dies or if they were refurbished. Refurbishing simply entails sending the die to a tool and die company "to resharpen, straighten, reattach tabs that might have been damaged during production, that type of thing." (Heffern. Depo. at 92.) The Court also notes that both Mr. Heffern and Mr. Milligan agreed that Youngstown kept the dies for a period of time while it was doing business with Pennsak. (Heffern Depo. at 102; Milligan Depo. at 72, 86.)

---

[6] The purchase orders state that the lip was 1 ½ inches, which means the total width of the header, unfolded, was 3 inches. (Ex. 41; Heffern Depo. at 55.)

2.   Sufficiency of the Evidence

Plaintiff urges that the witnesses' uncorroborated oral testimony is not sufficient to establish invalidity.  (Resp. to Mot. Summ. J. ¶ 11.)  However, Defendant notes the witnesses are not parties that stand to gain from this litigation, and "the corroboration rule is needed only to counterbalance the self-interest of a testifying inventor against the patentee."  (Reply to Mot. Summ. J. at 2 n.1 (quoting *Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999)).)  However, a subsequent panel decision distinguished this holding of *Thomson* without expressly overruling it.  *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1368–69 (Fed. Cir. 1999).  In *Finnigan*, the court held that "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Id.* at 1369.  This rule was necessary, the court reasoned, because witnesses' memories are often unreliable and because "[i]t is rare indeed that some physical record . . . does not exist."  *Id.* at 1366–67.   The court reasoned that *Thomson* addressed the sufficiency of the corroborating evidence rather than the necessity of corroboration.  *Id.* at 1368–69.  Many courts have noted the confusion concerning the corroboration requirement.  *See, e.g.*, *Netscape Communications Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 553–54 (E.D. Va. 2010); *Engate, Inc. v. Esquire Deposition Servs., L.L.C.*, 331 F. Supp. 2d 673, 685 (N.D. Ill. 2004); *K & K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 82 F. Supp. 2d 1012, 1018 n.7 (W.D. Mo. 2000).

The Court need not attempt to resolve this debate at this time.  Defendant has presented testimony of multiple witnesses and corroborating documentary evidence sufficient to satisfy the standard elucidated in *Finnigan*.

11

Furthermore, Plaintiff argues that "witnesses' recollection of claimed anticipation events occurring a significant time before their testimony is insufficient to surmount the clear and convincing standard."  (Resp. to Mot. Summ. J. ¶ 13 (citing *Juicy Whip v. Orange Bang*, 292 F.3d 728, 743 (Fed. Cir. 2002).)  However, in *Juicy Whip*, the delay between the event and trial was just one of many factors that the court considered in finding the evidence insufficient.  *See Juicy Whip*, 292 F.3d at 741 (finding that factors relevant to evaluating the credibility of oral statements include: "(1) delay between event and trial, (2) interest of witness, (3) contradiction or impeachment, (4) corroboration, (5) witnesses' familiarity with details of alleged prior structure, (6) improbability of prior use considering state of the art, (7) impact of the invention on the industry, and (8) relationship between witness and alleged prior user."  In *Juicy Whip*, the witnesses' testimony was not only eight to twelve years after the event, but the witnesses were interested parties and there were no writings sufficient to corroborate the testimony.  As stated above, there is sufficient documentary evidence to corroborate the testimony.  Moreover, Mr. Heffern and Mr. Utlak no longer work for Defendant and have no interest in this litigation.  Mr. Milligan has never been employed by Defendant, and has not supplied any products to either party in over eight years.  (Reply to Mot. Summ. J. at 2 n.1.)

Therefore, Defendant has shown, by clear and convincing evidence, that claims 3 and 4 were anticipated by the headers manufactured by Youngstown and the bag packs produced by Defendant in 1994.

Although Plaintiff's Response notes that Defendant must prove that the prior art contains each and every element of the invention (Resp. ¶ 10.), Plaintiff does not dispute that the sample headers and bag packs, identified by witnesses as being of the same type as those produced in

1994, anticipated every aspect of claims 3 and 4 of the '833 patent.  With respect to Claim 3, the bag packs are composed of a stack of plastic bags which form a pack.  The header is connected to the disposable upper portion of the stack of plastic bags and is folded over the top of the bags.  The header was made from a substantially rectangular piece of plastic with a handle formed from a generally central area of the rectangular piece.  It also included a pair of outer upper tabs to hand the stack of bags.  With respect to Claim 4, the header has an elongate opening through the handle for hanging the stack of plastic bags.  The middle tab is wider than it is tall.  (Heffern Decl. ¶ 16; Mot. Summ. J. at 9.)

Defendants have presented sufficient evidence for the Court to grant summary judgment of invalidity under both § 102(a) and § 102(b).  The production of the headers and bag packs occurred in 1994, before the critical date for both provisions.  Every element of the invention was known or used by others, as the evidence shows that at least the employees of Defendant and Youngstown, as well as the customers of Defendant, had access.  Defendant had access to the bag packs, and made them available to others through its sales.  The invention was "ready for patenting," as Defendant successfully manufactured it before the critical date. *See Pfaff*, 525 U.S. at 57 n.2.  Therefore, the Court finds that Defendant has proven, by clear and convincing evidence, that no reasonable jury could find claims 3 and 4 of the '833 patent valid.

## IV. PLAINTIFF'S MOTION TO STRIKE

Plaintiff has moved to strike much of the evidence submitted in support of Defendant's motion as hearsay, not based on personal knowledge, or otherwise deficient.

### A.  Exhibits 1–62

Plaintiff objects to Exhibits 1 through 62 as hearsay, because it believes that Defendant has not adequately established that they are business records under Rule 803(6).  Plaintiff notes

that Jennifer Boyer, the custodian of the records, did not start working for Pennsak until January 1, 1997, and that "she has no personal knowledge of any of the events surrounding the documents around the time of the potential statutory bars to the invention."  (Resp. to Mot. Summ. J. ¶ 15.)  However, "it is not necessary that a sponsoring witness be employed by the business at the time of the making of each record."  *U.S. v. Evans*, 572 F.2d 455 (5th Cir. 1978); *see also U.S. v. Sparks*, 85 F.3d 622 (5th Cir. 1996).  A custodian "must only be in a position to attest to its authenticity."  *Evans*, 572 F.2d at 455.   Ms. Boyer began working at Pennsak in 1997, and her declaration notes that, based on her personal knowledge since that date, "it was the standard practice of Pennsak to make contemporaneous records of the regularly conducted business of Pennsak."  (Boyer Decl. ¶ 10.)  All of the exhibits were found to be "in the proper organization as records are maintained in the ordinary course of business at Pennsak and Redi Bag."  (*Id.* ¶ 28.)  She states that records prior to 1997 were stored in boxes marked by year when she began, and that she consulted these records in the regular course of her duties.  (*Id.* ¶¶ 10, 12.)  Furthermore, Ms. Boyer states that Robin Snyder, the prior custodian of records from 1993 to 1998, instructed her on the standard practice during that time period.  (*Id.*)  Additionally, Defendant obtained an affidavit from Ms. Snyder certifying that it was the standard practice of Pennsak to make and store contemporaneous records of the regularly conducted business during the time period at issue, including 1994.  (Snyder Decl., Doc. 44-1, ¶¶ 6-9.)

Plaintiff also objects to these exhibits because it states that the records belonged to Jeffrey Rabiea personally.  It cites his deposition testimony, where Mr. Rabiea stated, "The records belong to me personally." (Rabiea Depo., Doc. 42-1, at 92.)  However, Mr. Rabiea classified the records as belonging to him personally because "Pensak belonged to [him] personally."  (*Id.*)  In the same deposition, Mr. Rabiea asserts that "those were Pensak [sic]

business records." (*Id.*)  He clarifies that the relevant Pennsak documents were stored at Redi Bag's facility and that Jennifer Boyer was in possession of the records.  (*Id.* at 90–92.)[7] Defendant also submits a declaration signed by Mr. Rabiea that confirms that he "at no time personally owned those records;" his only ownership interest in Pennsak or Redi Bag records was "through [his] ownership interest in those companies." (Rabiea Decl., Doc. No. 45-2, ¶ 6). He notes, "Because those businesses have been my personal responsibility for the past fifteen years, I spoke with imprecision in response to certain deposition questions." (*Id.*)  The Court is convinced that these records are the records of Pennsak and Defendant Redi Bag, and Jennifer Boyer's affidavit is sufficient to qualify these business records under Rule 803(6).

### B.  Declaration of Jennifer Boyer

Plaintiff objects to portions of Ms. Boyer's declaration because they are not based on personal knowledge and constitute hearsay.  The Court finds the declaration of Jennifer Boyer to be a business records affidavit.  As such, "personal knowledge of all the contents . . . is not required." *Texas A&M Research Foundation v. Magna*, 338 F.3d 394, 402 (5th Cir. 2003). "All hearsay statements come within the business record exception, and were entirely supported by business records attached to the affidavit." *Federal Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991), *cert. denied,* 502 U.S. 1092 (1992).

### C.  Declaration of John Heffern

Plaintiff objects to the second sentence of paragraph 7 and the entirety of paragraphs 9, 10, and 14–22.  First, it argues that the testimony relies on hearsay information.  As stated above, Exhibits 1–62 are not hearsay, but rather admissible business records.  Also, Mr. Heffern

---

[7] Mr. Rabiea states that "the records . . . have been in Jennifer's possession since [the sale]." (Rabiea Depo. at 91.) He did not believe that Defendant Redi Bag used the records, but "they were in boxes in the archives." (*Id.*)  He stated, "[T]hose were Pensak business records.  It is only natural Pensak would take their business records and move to the next location with the records. . . . [Jennifer Boyer] is my manager in Ohio, and she is in possession of those records.  That's where they are, and they will stay there." (*Id.* at 92.)

personally recognized many of the exhibits he was shown.   Plaintiff also argues that the referenced exhibits are not relevant, and that Mr. Heffern's declaration is inconsistent with portions of his deposition where he stated that he was not sure when they started making bags with three-tab headers.  The exhibits are clearly relevant to proving invalidity of the patent due to anticipation.   Additionally, the Court finds Mr. Heffern has personal knowledge about the question at issue—whether bag packs with three-hole headers were produced in 1994.  His handwriting was on some of the purchase order exhibits (Ex. 41; Heffern Depo. at 106–07), and he signed for at least one delivery of headers from Youngstown on July 15, 1994.  (Exhibit 12 at 38; Heffern Depo. at 48.)

His affidavit is still based on personal knowledge even if his memory was refreshed by a review of the business records, as his responsibilities at Pennsak included working with records and samples of the types offered as business records.  *See Carson v. Perry*, 91 F.3d 138, 1996 WL 400122, at *1 (5th Cir. June 6, 1996) ("We have held that an affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns.") (citing *F.D.I.C. v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1254–55 n.12 (5th Cir. 1992), *cert. denied,* 507 U.S. 1051 (1993);  *Resolution Trust Corp. v. Camp,* 965 F.2d 25, 29 (5th Cir. 1992)); *see also  Allied Sys., Ltd. v. Teamsters Auto. Transport Chauffeurs,* 304 F.3d 785, 792 (8th Cir. 2002), *cert. denied,* 538 U.S. 924 (2003); *Washington Cent. R.R. Co., Inc. v. National Mediation Bd.,* 830 F. Supp. 1343, 1352-1353 (E.D. Wash. 1993) (citing *Londrigan v. FBI,* 670 F.2d 1164, 1174-1175 (D.C. Cir. 1981); *Vote v. United States,* 753 F. Supp. 866, 868 (D. Nev. 1990), *aff'd,* 930 F.2d 31 (9th Cir. 1991)).

### D.  Deposition Testimony

Plaintiff asserts that portions of the deposition testimony of each witness should be stricken because they are not based on personal knowledge but hearsay.  Specifically, Plaintiff moves to strike pages 11–36 of the deposition of John Heffern; pages 6, 8–10, 12, 19–25, 34, 35, 39, 41, 55, 56 of the deposition of John Milligan; and pages 13, 18–29, 46–49, 41, and 46–49 of the deposition of Victor Utlak.  However, the exhibits referenced in the depositions are not hearsay but business records, as noted above.  Plaintiff further argues that Defendant did not clearly identify those deposition excerpts that establish the facts alleged.  Defendant dedicated almost twelve pages of its brief to highlighting relevant testimony from the depositions and declarations.  The Court finds that the depositions are acceptable summary judgment evidence.

## V.  CONCLUSION

For the reasons stated in this order, Defendant's Motion for Summary Judgment of Invalidity is **GRANTED**.  Plaintiff's Motion to Strike is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 10th day of November, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE